In The United States District Court
For the District of Maryland
Southern Division

**John B. Kimble**
**P.O. Box 127**
**Spencerville, Maryland 20868**
**Plaintiff**

2011 MAY 27 P 12:09

11 CV 1457

Civil Action Number_____

vs

**Rajesh K. Rajpal M.D.**
**8138 Watson Street**
**Mclean, Virginia 22102**

**&**

**See Clearly Vision LLC**
**5842 Hubbard Drive**
**Rockville, Maryland 20852**
**Serve: Resident Agent GREGORY BARFORD, CPA**
**11801 FINGERBOARD RD.**
**MONROVIA, MD 21770**
**Defendants**

### Complaint

Comes now the Plaintiff and for causes of actions against the Defendants alleges as follows:

### Jurisdiction and Venue

1. The amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000).

2. Plaintiff John Kimble resides in Maryland and was a resident of Maryland at the time of the alleged incidents involved in this instant action... Defendant Rajesh K. Rajpal, M.D. is a licensed physician in the State of Virginia and maintains practices in Maryland, Virginia and Washington, D.C. known as See Clearly Vision which is the other defendant in this instant case at hand and defendants transact business in this district, and the acts

1

and omissions that form the basis of this Complaint occurred in this district as well as within Virginia in one cause of action resulting in medical malpractice/negligence.

3. Jurisdiction and venue in this Court are therefore proper pursuant to 28 U.S.C. § 1332 and 28 U.S.C.§ 1391(a), respectively, based upon diversity of citizenship of the parties.

4. The Maryland Long Arm Statute also applies in this case as the Defendants gain a substantial portion of their income from business interests and clients from within the State of Maryland.

## JURY TRIAL DEMANDED

5. Plaintiff, John B. Kimble hereby files this Complaint and Jury Demand against the defendants and alleges as follows:

### Introduction and Background

6. On April 14, 1999, John B. Kimble did present himself at the See Clearly Vision center in Mclean, Virginia, for Lasik surgery, which was performed by Rajesh K. Rajpal, M.D. John B. Kimble had been referred to Dr. Rajpal by Dr Charles Mund of Greenbelt, Maryland who was referring patients to Dr. Rajpal for the Lasik procedure. At a pre surgery exam it was determined that there was corneal fluctuation in John B. Kimble's eyes as his vision was different than the exams previously given by Dr. Charles Mund. The topography image that was taken prior to the lasik procedure also showed what appeared to be very steep corneas in the Plaintiff's eyes and that the corneas of Plaintiff John Kimble had been changing and not stable.. At the signing of the release form

John B. Kimble was never notified at any time that a condition called "ectasia" was ever a possibility and that the only thing that may happen was a little "dry eye". As a result of the Defendants' actions and inactions, after a period of approximately two to three years, John Kimble started having fuzzy vison in the left eye. Plaintiff also experienced halos and double vison of street lights and road lines as the condition progressed. On many visits to the White Flint location of Dr Rajpal in 2003 and then at the Hubbard Drive location for See Clearly Vision in Rockville, Maryland, Dr. Rajpal and his staff were told that John B. Kimble was having difficulty seeing clearly out of the left eye and that the vision was getting worse with no explanation. John Kimble developed severe visual disabilities, which caused extreme difficulty in doing any life activities which included any gainful or enjoyable activity..

7. During the period of time from 2004 to 2008 corneal topographies(specialized pictures of the cornea) were taken of John Kimble's eyes and even though Dr. Rajpal never said anything about them, the topographies clearly said, "Suspect Keratoconus" from the automated machine images. (Exhibit 1)

8. During the visit on May 29, 2008, John B. Kimble was informed by Dr. Rajpal that his left eye had "corneal ectasia" and that there was nothing to be done about it to correct the problem and that potentially a cornea transplant could be needed. (Ectasia) keratectasia is a complication after LASIK that is induced inadvertently by the surgeon performing the procedure. The cutting of the flap and the subsequent laser ablation weakens the cornea

and causes a bulging in the weakest area. The cornea continues to bulge because it has been destabilized. This bulging results from the cornea being thinned to the point that the internal pressure of the eye affects the structurally weakened cornea. The bulging usually is not even, so the effect is about the same as keratoconus -- a form of irregular astigmatism that is extremely difficult to treat. The process is irreversible once it begins.

9. On John Kimble's own initiative he looked up corneal ectasia on the internet and found that Dr. Peter Hersh, a noted eye surgeon in New Jersey and New York was involved in clinical trials doing a procedure called "corneal crosslinking" which applied collagen to the affected eyes to strengthen the cornea and slow the progression of the ectasia. From what John Kimble was told by Dr Peter Hersh, this procedure had been done in Europe and Canada and England in trial basis for about five years prior to the United States trials being started by the FDA. .

10. John Kimble's vision had gone from 20/40 in 2003 to 20/200 or even 20/400 during the time frame of a few years. It does appear that if John Kimble had been notified or made aware of the crosslinking procedure prior to 2008 that he may have been able to slow or stop the progression of the corneal ectasia which has left John Kimble disfigured and with one eye deformed and with acute loss of vision.

11. Dr. Rajpal has printed on his website:

**"Dr. Rajpal is a board certified Ophthalmologist who was the first surgeon in the Washington, DC area to perform excimer laser refractive surgery as a principal investigator in the clinical trials for FDA approval. He has trained over 2,000 Ophthalmologists around the country in excimer laser surgery techniques and has treated thousands of patients for nearsightedness, farsightedness and astigmatism"**

Given the fact that Dr. Rajpal was one of the first to perform the lasik procedure he should have

known about the propensity for ectasia to develop in eyes treated with the procedure and to not perform the procedure on steep corneas and eyes that may be subject to ectasia. Ectasia was first reported in 1996 by Dr. Theo Seiler and and all doctors who exercised due diligence and caution for their patients should have noted that these serious and disfiguring and blinding conditions existed and that proper screening should have been developed or if patients who had high degrees of myopia should have not been treated with the lasik procedure.

12. On or about July 2009 John Kimble had 20/20 vision in the right eye but because of the concerns of having ectasia and potentially going blind John Kimble's eye pressure did build up. Dr Peter Hersh of New Jersey prescribed Timolol GFS in the .25 solution and the vision remained at 20/20 until John Kimble was given samples of Istalol by Dr Rajpal. Istalol is .50 percent Timolol and the Plaintiff's vision changed from 20/20 to 20/50 and has not ever gone back to 20/20 at all.. John Kimble has also started experiencing some ghosting in the right eye and also double vision at night in the right eye but he has not been diagnosed with corneal ectasia in the right eye at this time and he remains cautiously optimistic.

13. At this time John Kimble has to use extreme caution at night walking or driving or any other activity because of the complications of the ectasia brought on by the actions and inactions of the Defendants. John Kimble continues to seek help in restoring vision and correcting the disfigurement caused by the Defendants and so far it has been no luck in correcting the disfigurement caused by the Defendants and only partially able to have any usable vision but Plaintiff Kimble has bene told that he is disabled by his corneal ectasia.

14. As a result of Defendants' negligence, John Kimble and his family have suffered great emotional distress and economic loss. Consequently, as set forth below, plaintiff seeks damages against defendants for negligence/medical malpractice, breach of informed consent, and Common Law Fraud and Misrepresentation.

## FIRST CLAIM FOR RELIEF
### (Negligence/Medical Malpractice)

15. Plaintiff incorporates all averments as though fully repeated and set forth herein made in Paragraphs 1-14, above.

16.. The negligent and careless acts and/or omissions of Dr. Rajpal, individually and/or through his real, apparent and/or ostensible agents, servants and/or employees, include but are not necessarily limited to:

a. failing to adhere to his duty to care for plaintiff John KImble using the standard of care normally exercised by physicians generally under like conditions and similar surroundings;

b. failing to render appropriate medical care and treatment to John Kimble;

c. negligently allowing people into the operating room during the procedure on John Kimble and over booking people into the surgery time allotted so that the surgeon was notable to take the time necessary to provide a safe environment and outcome for Plaintiff John Kimble;

d. failing to heed John Kimble's condition;

e. departing from accepted standards in the procedures and treatment performed;

f. failing to follow appropriate practice;

g. failing to properly examine John KImble;

6

h. failing to properly treat John Kimble's eyes; and,

i. failing to supervise the technicians and staff assisting with the Subject Surgery and not referring to notes and topographies which may have inferred a possible negative outcome for John Kimble by having the procedure..

17. As a direct and proximate result of the negligence of Dr. Rajpal, John Kimble experienced excruciating pain and suffering, suffered loss of vision, was otherwise grievously injured and damaged because of the complications of the Subject Surgery.

18.. One or more of the foregoing breaches of the duty of reasonable care, by Dr. Rajpal, was a proximate cause of the injuries and damages sustained by plaintiff.

19. The See Clearly Vision Group is vicariously liable under the laws of agency and *respondeat superior* for the acts and omissions of its agents, servants and/or employees who negligently treated and/or negligently cared for John Kimble, while he was a patient of See Clearly Vision Group.

Any negligence of these agents, servants, and/or employees is imputed, by law, to the See Clearly Vision, under the principles of actual or apparent agency and/or *respondeat superior*.

20. The negligent and careless acts and/or omissions of See Clearly Vision Group, through its real, apparent and/or ostensible agents, servants and/or employees, include but are not necessarily limited to the following:

a. failing to train, supervise and manage Dr. Rajpal, and its technician(s).

b. failing to promulgate and/or enforce surgical protocols to prevent the negligent acts

7

complained of herein, and in particular, the failure to require cross-checking and/or the failure to competently assure that the data was sufficient and fully compiled prior to performing the lasik procedure on an unsuspecting patient.

21. One or more of the foregoing acts or omissions by Dr Rajpal and See Clearly Vision Group, was a proximate cause of the injuries and damages sustained by plaintiff.

## SECOND CLAIM

### (BREACH OF INFORMED CONSENT)

22. PLAINTIFF incorporates the averments numbered from 1-21 as though fully repeated and set forth herein, above.

23. Each of DEFENDANTS, their agents, servants and/or employees failed to disclose all of the information that reasonably prudent medical practitioners, under similar circumstances, would explain or disclose to a patient including a failure to disclose the risks and benefits of the procedures performed, the alternatives thereto and the risks and benefits relating to the alternatives and they otherwise failed to properly, adequately, thoroughly and fully inform plaintiff herein.

24. DEFENDANTS failed to communicate orally the full risks of the lasik procedure to the patient adequately. DEFENDANTS' written forms of informed consent were chaotic and did not fully disclose correspond to the respective lasik surgical procedures. For the lasik surgery, on April 14, 2009, DEFENDANTS used a general lasik consent form which did not disclose the potential risks to the patient at all.

25. A reasonably prudent person in PLAINTIFF'S position would not have undergone the procedures performed if he had been fully informed, and that lack of informed consent is a proximate cause of the injuries suffered herein for which recovery is sought.

26. The treatment rendered by DEFENDANTS herein was not emergent treatment, an emergency procedure or emergency surgery.

27. As a result of DEFENDANTS' breach of duty of informed consent, PLAINTIFF sustained substantial permanent damages.

## Third Claim
## Common Law Fraud and Misrepresentation of Facts

28. PLAINTIFF incorporates the averments numbered 1-27 as though fully repeated and set forth herein above.

29. The Defendants failed to tell Plaintiff Kimble about the possible permanent damages/injuries that could happen to him by having this lasik procedure and he sustained permanent disfiguring injuries because of their actions and inactions.

30. As a direct and proximate result of the negligent acts and negligent omissions of defendants, plaintiff John Kimble, suffers severe, unnecessary pain and associated damages, for which PLAINTIFF is entitled to recover by law.

31. As a direct and proximate result of the negligence of DEFENDANTS, PLAINTIFF has suffered substantial damages including medical expenses, loss of earnings and/or impairment of earning capacity, loss of enjoyment of life, mental anguish, pain and

suffering and other damages, and such statutory damages as are provided under the Consumer Fraud Act and allow reasonable fees ad cost associated with such action.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF demands of DEFENDANTS a reasonable sum of money as actual, compensatory, and punitive damages on the first and second and third claims; Not less than three million dollars($3,000,000.00) and lifetime vision care for his eyes paid for by the Defendants in this instant case and an order that the Defendants must inform all prospective lasik patients of the possibility of ectasia and permanent injury from the procedure known as lasik.

May 27, 2011                                                  Respectfully submitted,

*John B. Kimble*

**John B. Kimble**
**Plaintiff**
P.O. Box 127
Spencerville, Maryland 20868-0127
301-408-3000

Certificate of Service

I hereby certify that on this 27th day of May 2011 that I have filed two original copies for the Court and two copies for the Defendants as well as a copy to be dated and returned to me.

*John B. Kimble*